IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PHYLLIS A. GROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-0870-CV-W-ODS-SSA |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION AFFIRMING FINAL DECISION
OF COMMISSIONER OF SOCIAL SECURITY**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits. For the following reasons, the Commissioner's decision is affirmed.

**I. BACKGROUND**

Plaintiff Phyliss A. Gross filed her application for disability insurance benefits on February 1, 2002, alleging that she has been disabled since June 15, 1994. Plaintiff's claim was denied. After a hearing was held, the Administrative Law Judge ("ALJ") issued a decision on April 23, 2004, finding that Plaintiff was not under a "disability" as defined in Title II of the Social Security Act at any time she met the insured status requirements.[1] The Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 30, 2004. Thus, the decision of the ALJ remains the final decision of

---

[1] It is uncontested that Plaintiff was insured for disability benefits through December 31, 1996. "When an individual is no longer insured for Title II disability purposes, we will only consider an individual's medical condition as of the date she was last insured." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997) (citations omitted). Therefore, Plaintiff must establish disability on or before December 31, 1996. Tr. 11. For this reason, the Court concentrates its analysis on Plaintiff's medical records preceding that date.

the Commissioner relevant to this appeal.

## A. *Administrative Hearing*

At the hearing held before the ALJ, Plaintiff testified that she was born in 1940 and had a seventh grade education. Tr. 18. She last worked in 1994 as a restaurant owner/manager, but had to quit because of pain in her neck and back and irritable bowel syndrome. Tr. 19-22. Between 1994 and 1996, Plaintiff she hurt all the time and could not look up or from side to side without pain. Her back pain would radiate down her legs, and her hands would sometimes go to sleep. On a scale of one to ten, with ten being the worst, Plaintiff rated her pain at a nine. Tr. 32. Pain medication eased some of the pain but did not completely alleviate it. Tr. 19-20. Epidural blocks eased the pain initially. Tr. 30. Plaintiff stated that she could lift no more than ten pounds and could not reach above her head. Tr. 23, 25. She also had problems concentrating. Tr. 29. She could walk less than one block, could only sit for thirty minutes to an hour and could stand for about thirty minutes. Tr. 24, 31.

Plaintiff testified that she began seeing a physician about irritable bowel syndrome in 1993 or 1994. She stated that sometimes she would get a spasm, which would cause her to pass out. When she woke up, she would experience a spell of diarrhea. This would happen once or twice and week and would leave her unconscious for ten to fifteen minutes. Tr. 22-23.

Vocational Expert (VE) Gwen Keliihoomalu testified that Plaintiff's past relevant work included restaurant owner/manager. Tr. 33. The ALJ posed a hypothetical question asking whether an individual the same age, education level and work experience as Plaintiff could perform any work if that person could walk less than one block at one time; stand no more than thirty minutes at one time; sit between thirty minutes to one hour at one time; lift, carry, push and pull less than ten pounds occasionally; could not do any work that would require reaching over one's head; and would be able to concentrate no more than fifteen to twenty minutes on any type of process or activity. The VE responded that such an individual could not work in Plaintiff's past relevant work or any other job. Tr. 34.

2

The ALJ posed a second hypothetical question asking whether an individual the same age, education level and work experience as Plaintiff could perform any work if that person could walk less than one block at one time; stand no more than thirty minutes at one time; sit no more than one hour at one time; lift, carry, push and pull less than ten pounds; could not do any work that would require reaching over one's head; could not repetitively move one's head up and down and side to side; and would be able to concentrate no more than fifteen to twenty minutes in any type of process or activity. The VE responded that such an individual would not able to perform Plaintiff's past relevant work or any other job. Tr. 34-35.

## B. *Medical Records*

On May 4, 1993, Plaintiff saw Robert Buzard, M.D., for low back and neck pain. Dr. Buzard noted tenderness along the para lumbar muscles but had full range of motion of her lower back. Dr. Buzard noted that Plaintiff had a history of degenerative joint disease in the low back. Tr. 357. On September 9, 1993, Dr. Buzard noted that trigger point injections that Plaintiff received in May 1993 provided six weeks of relief. Plaintiff reported continued pain but continued to have full range of motion of the lower back. Dr. Buzard diagnosed her with lumbar strain. Tr. 355.

On October 15, 1993, an MRI showed degenerative disc disease with disc spacing narrowing and decrease in disc space in the lower back but no definite evidence of a herniated disc, spinal stenosis[2] or neural foraminal[3] narrowing. Tr. 205. That same month, a physical examination of Plaintiff showed that she could change positions without difficulty and could flex the low back to bring the fingertips to her knees. Tr. 204.

In January and February 1994, Plaintiff was seen at the Medical Arts Center for

---

[2] A stricture of the spinal canal. STEADMAN'S MEDICAL DICTIONARY 1695 (27th ed. 2000).

[3] "An aperture or perforation through a bone or a membranous structure." STEADMAN'S at 698.

low to mid-back and neck pain.  On both occasions, the treating physician diagnosed urinary tract infection.  Plaintiff was prescribed Elavil for pain.  Tr. 124-25.  Plaintiff was not seen again at the Medical Arts Center until August 9, 1994, complaining only of left shoulder pain.  She was prescribed Lodine and Daypro (anti-inflammatories).  Tr. 126-27.  Plaintiff returned to the Medical Arts center for two follow-up visits on her shoulder pain and two unrelated visits during the remainder of 1994.  During these visits, Plaintiff did not mention back or neck pain.  Tr. 127-31. In fact, it was not until February 1997 that Plaintiff complained of back pain.  Tr. 133.

In April 1995, Terrence W. Coleman, M.D., treated Plaintiff for indigestion and abdominal pain and preliminarily diagnosed her with irritable bowel syndrome and non-ulcer indigestion.  Plaintiff was treated with medication and fiber supplements, and by December 1995, she only experienced minimal symptoms.  Tr. 380-83.  An EGD and colonoscopy had normal results.  In January 1996, Plaintiff's gall bladder was removed laparoscopicly.

On February 4, 1997, Plaintiff returned to the Medical Arts Center complaining of low back pain radiating down her right leg.  The neurological examination was normal, and she was diagnosed with degenerative disc disease.  Tr. 133.  She was seen again on April 10, and April 15, 1997, for back pain.  Tr. 135-16.  On April 17, 1997, an MRI showed desiccation[4] at all disc levels and narrowing of one of the discs in her lower back.  There were mild ring-shaped bulges in two discs in her lower back.  The results summarized the condition as "moderate" degenerative disc space narrowing in the lower back.  Tr. 202.

In June 1997, an examination of Plaintiff by Julie W. Heise, M.D., indicated that she had a normal gait and could heel to toe walk without difficulty.  She had tenderness throughout the lumbar spine.  Plaintiff was diagnosed with lumbar radiculopathy[5] and was administered an epidural steroid injection.  Tr. 212-15.  On June 19, 1997, Plaintiff stated she had nearly 100% relief from her low back and right leg pain following the

---

[4] "To dry thoroughly; to render free of moisture."  STEADMAN'S at 483.

[5] "Disorder of the spinal nerve roots."  STEADMAN'S at 1503.

4

epidural injection.  Plaintiff told Dr. Heise that she was walking on her farm and taking care of her livestock without any pain.  Dr. Heise opined that because Plaintiff was "so active at home," she did not feel that physical therapy was necessary; however, Plaintiff was limited to lifting no more than fifteen pounds.  Plaintiff was administered a second epidural injection.  Tr. 216-17.

From March 1998 through June 1999, Plaintiff visited the Medical Arts Center on seven occasions complaining of lower back pain.  Tr. 150, 151, 152, 154, 157, 160, 163.  Another MRI was conducted in June 1999, which showed degenerative disc disease at all levels and central disc bulges in the lower back.  A rounded area of increased intensity in the lower back suggested hemangioma[6] or lipoma[7] in the bone.  Tr. 224, 369.

On July 6, 1999, Plaintiff was seen again by Dr. Buzard who noted that Plaintiff's lower back was tender, but she had full range of motion in the lower back.  She diagnosed with low back pain and degenerative joint disease.  Tr. 353.  Plaintiff returned about a week later complaining of neck pain that began after she canned thirty-two quarts of green beans the day before.  Dr. Buzard's examination showed that Plaintiff's neck was tender and her lower back felt better.  He diagnosed Plaintiff with neck pain and improving lower back pain, and prescribed pain medication.  Tr. 352.

**C.  ALJ's Decision**

After the hearing, the ALJ determined that Plaintiff had the following medically determinable impairments: neck and lower back pain and irritable bowel syndrome. The ALJ found Plaintiff's testimony and statements concerning her impairment were disproportionate to the medical evidence in the record.  Based on record as a whole, the

---

[6] "A congenital anomaly, in which proliferation of blood vessels leads to a mass that resembles a neoplasm. . . ."  STEADMAN'S at 795.  A neoplasm is "[a]n abnormal tissue that grows by cellular proliferation more rapidly than normal and continues to grow after the stimuli that initiated the new growth cease."  STEADMAN'S at 1189.

[7] "A benign neoplasm of adipose tissue, composed of mature fat cells."  STEADMAN'S at 1021.

ALJ concluded at step two of the five-step sequential evaluation process that Plaintiff's impairments were not severe, and, therefore, she was not disabled. Tr. 13-14.

## II. DISCUSSION

Plaintiff appeals the decision of the Commissioner of the Social Security Administration claiming (1) the ALJ improperly evaluated Plaintiff's subjective complaints; (2) remand is appropriate for consideration of additional evidence; and (3) the ALJ committed error by failing to consider the VE's testimony.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretarys conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

### A. Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ did not properly evaluate her credibility in finding that she did not have a severe impairment during the relevant time period. The familiar standard for analyzing a claimant's subjective complaints is set forth in Polaski v. Heckler:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective

> complaints solely because the objective medical evidence does not fully
> support them.
>      The absence of an objective medical bias which supports the
> degree of severity of subjective complaints alleged is just one factor to be
> considered in evaluating the credibility of the testimony and complaints.
> The adjudicator must give full consideration to all of the evidence
> presented relating to subjective complaints, including the claimant's prior
> work record, and observations by third parties and treating and examining
> physicians relating to such matters as:
>
> 1.  the claimant's daily activities;
> 2.  the duration, frequency and intensity of the pain;
> 3.  precipitating and aggravating factors;
> 4.  dosage, effectiveness and side effects of medication
> 5.  functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective
> complaints solely on the basis of personal observations.  Subjective
> complaints may be discounted if there are inconsistencies in the evidence
> as a whole.

739 F.2d at 1322 (subsequent history and internal citations omitted).  Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole.  See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996).  Further, an ALJ does not have to discuss each Polaski factor as long as the analytical framework is recognized and considered.  Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

When assessing Plaintiff's credibility, the ALJ appropriately noted the objective medical evidence did not support disabling symptoms.  Plaintiff complained of disabling pain; however, the medical records indicate she had full range of motion of the lower back, and there was no evidence of herniated disc or other disabling conditions.  Tr. 205, 355-37.  Additionally, the ALJ noted that Plaintiff did not complain of lower back pain during multiple visits to the doctor from February 1994 until February 1997.  Tr. 13. Even five months after her insured status had expired, Plaintiff was observed with a normal gait and she reported that she had nearly 100% relief from her low back pain with epidural injections.  Tr. 212-16.  The ALJ also acknowledged that two and one-half

7

years after her insured status expired, Plaintiff had reported that she canned thirty-two quarts of green beans in one day, indicating that Plaintiff was not disabled. Tr. 13, 352. The ALJ properly evaluated Plaintiff's credibility and considered the inconsistencies upon which he relied in discrediting her testimony.

**B. Consideration of Additional Evidence**

Plaintiff also argues that remand is appropriate for consideration of medical evidence that is not currently part of the record. Section 405(g) of Title 42 of the United States Code generally precludes consideration of new evidence. Remand is appropriate "only upon a showing by the claimant 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Jones v. Callahan, 122 F.3d 1148 (8th Cir. 1997) (quoting 42 U.S.C. § 405(g)). Plaintiff admits that "the good cause showing. . . is not present at this stage. . . ." Pl's Brief at 8. Moreover, Plaintiff does not indicate whatsoever that the new evidence is material, non-cumulative, relevant or probative of Plaintiff's condition during the relevant time period. For these reasons, remand is not appropriate.

**C. VE's Testimony**

Finally, Plaintiff claims that the ALJ did not properly consider the VE's testimony. The ALJ decided Plaintiff's claim at step two of the five-step sequential process - a step at which a VE's testimony is not relevant. An ALJ can properly terminated the analysis at step two if he or she finds that the impairment or combination of impairments have "no more than a minimal effect on the claimant's ability to work." Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1995). Here, the ALJ properly determined that, based on the record as a whole, Plaintiff's impairments did not have more than a minimal effect on her ability to work. Therefore, the VE's testimony was not necessary, and the ALJ did not err in failing to consider the VE's testimony.

8

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion is denied, and the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

Date: June 15, 2005                                    /s/  Ortrie D. Smith
                                                       ORTRIE D. SMITH, JUDGE
                                                       UNITED STATES DISTRICT COURT

9